1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE DISTRICT OF ARIZONA**

8

9    Ruben Bolivar,                          No. CV-24-00271-TUC-AMM (BGM)

10              Petitioner,                   **REPORT AND RECOMMENDATION**

11   v.

12   Ryan Thornell, et al.,

13              Respondents.

14

15         Before the Court is Petitioner Ruben Bolivar's first amended Petition Under

16   28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody.  (Doc. 17.)

17   The petition has been fully briefed.  (Docs. 10, 18, 19.)  Under Local Rules of Civil

18   Procedure 72.1 and 72.2, this matter was referred to Magistrate Judge Bruce G. Macdonald

19   for a report and recommendation.  (Doc. 6 at 4.)  The Magistrate Judge recommends that

20   the District Judge, after her independent review, deny the petition and dismiss this case.

21                         **BACKGROUND[1]**

22         [Ruben] Bolivar is Becca's stepfather, but [Becca] believed him to be her biological

23   father until she was fifteen years old.[2]  *State v. Bolivar*, 477 P.3d 672, 676 (Ariz. Ct. App.

24   2020).  From approximately 2005 to 2015, while Becca was between the ages of four and

---

[1] The Court adopts the facts in the background section as recited in *State v. Bolivar*, 477 P.3d 672 (Ariz. Ct. App. 2020). State appellate court findings are entitled to a presumption of correctness on habeas review. *Estrada v. Scribner*, 512 F.3d 1227, 1239 (9th Cir. 2008).

[2] "Becca" was used as a pseudonym to protect the victim's privacy. The Court uses the same pseudonym for identical reasons.

fifteen, Bolivar committed numerous sexual offenses against her, including touching her breasts and vagina, oral sex, and, after she had turned fifteen, three instances of intercourse. *Id*.

## PROCEDURAL HISTORY

### Conviction and Direct Appeal

On January 31, 2018, following a nine-day jury trial, Bolivar was convicted of one count of sexual conduct with a minor, three counts of sexual assault, three counts of sexual abuse, and one count of child molestation.  (Doc. 1-2 at 60-63.)  He was sentenced to life imprisonment to be served consecutively to a combination of concurrent and consecutive prison terms totaling 68.5 years.  (*Id*.)

On November 18, 2019, Bolivar appealed his convictions raising seven arguments for relief.  (Doc. 1 at 9-76.)  He argued that: (i) the trial court erred by denying his motion *in limine* to refrain from referring to the complaining witness as a "victim" during trial; (ii) the trial court improperly commented on evidence when it allegedly informed prospective jurors that "defendant is sexually abusing his stepdaughter"; (iii) the trial court abused its discretion in denying his motions for mistrial and change of venue; (iv) two of the counts for which he was convicted should have been charged as alternate counts to a separate count in the information; (v) two of his criminal convictions were invalid because the jury should not have rendered any verdict after finding him not guilty of count one; (vi) his sexual abuse and sexual assault convictions should be vacated for insufficient evidence; and (vii) he was denied his Fourteenth Amendment procedural due process rights due to improper burden shifting.  (*Id*.)

On October 27, 2020, the Arizona Court of Appeals affirmed Bolivar's convictions and sentences.  *Bolivar*, 477 P.3d at 672.

### Rule 32 Petition for Post-Conviction Relief

On March 12, 2022, Bolivar filed a Rule 32 petition for post-conviction relief (PCR Petition) raising three arguments for relief.  (*See* Docs. 1 at 259-68; 1-1 at 1-5, 9-26.)  He argued that: (i) he suffered ineffective assistance of counsel for his trial attorney's failure

to object to profiling testimony; (ii) he suffered ineffective assistance of counsel due to his attorney's failure to request a Rule 11 evaluation; and (iii) he was denied due process of law because the trial judge failed to recuse himself after hearing one-sided testimony. (*Id.*)

On February 17, 2023, the trial court denied Bolivar's petition and evidentiary hearing request. (Doc. 1-2 at 168-177.) In denying his first ineffective assistance claim, the court ruled that the prosecution expert's testimony was limited, non-specific, and non-prejudicial, and that it could not have plausibly and intelligently influenced the jury's verdicts. (*Id.* at 174-75.) In rejecting his second ineffective assistance claim, the court ruled that Bolivar failed to provide evidence demonstrating his trial attorney was aware of his alleged physical challenges during trial. (*Id.* at 176.) In denying his due process claim, the court concluded that there was no evidence indicating the jury was influenced by the court's statements or rulings related to Bolivar's custodial status or the underlying events leading to the revocation of his conditions of release. (*Id.* at 176-77.)

**Petition for Review**

On March 9, 2023, Bolivar petitioned the state court of appeals to review the denial of his PCR Petition. (Doc. 1-2 at 179-226.) He raised three claims, asserting the trial court erred in denying his petition because: (i) it misapplied *Strickland's* standard to his ineffective assistance claims; (ii) he presented a colorable claim that without trial counsel's failure to object to prejudicial profiling testimony there was a reasonable probability that the result of the trial would have been different; and (iii) the judge should have recused himself from trial to ensure public confidence in the judicial system. (*Id.* at 199-225.)

On June 9, 2023, the Arizona Court of Appeals granted review, but denied relief. *State v. Bolivar*, No. 2 CA-CR 2023-0060-PR, 2023 WL 3938976, at *1 (Ariz. Ct. App. June 9, 2023). The court refuted Bolivar's assertion that the prosecution expert's testimony went unchallenged and reiterated that "expert testimony about victim behavior that also describes or refers to a perpetrator's characteristics has the potential to be profile evidence but is not categorically inadmissible." *Id.* ¶¶ 7, 9 (cleaned up). The court agreed with the trial court that any profile testimony admitted before the defense attorney's sustained

1  objection was limited and relatively non-specific.  *Id.* ¶ 11.  The court affirmed the trial

2  court's determination that Bolivar failed to establish a colorable profiling claim.  *Id.*

3  In response to his second ineffective assistance claim, the court concluded that

4  Bolivar failed to avow that he had informed his attorney of his alleged health conditions

5  during trial.  *Id.* ¶ 13.  The court observed that even if he had informed his attorney of his

6  physical challenges during trial, the challenges would not rise to the level of incompetence

7  required by Rule 11.[3]  *Id.* ¶ 14.  The court credited the trial court's observation that Bolivar

8  appeared articulate and lucid at trial, and it reiterated that he failed to present more than a

9  conclusory assertion of a colorable ineffective assistance claim.  *Id.* ¶ 15.

10  In response to Bolivar's due process claim, the court concluded that the claim was

11  procedurally barred under Rule 32.2(a)(3).[4]  *Id.* ¶ 16.  The court added that even if the claim

12  was not precluded, it would still fail because Bolivar failed to allege judicial bias from an

13  extrajudicial source or any actual bias by the court.  *Id.* ¶¶ 17-18.

14  On October 17, 2023, the Arizona Supreme Court denied review.  *See Bolivar*, 2023

15  WL 3938976.

16  **Federal Habeas Corpus Petition**

17  On October 23, 2024, Bolivar filed the amended habeas petition at hand raising eight

18  grounds for relief.[5]  (Doc. 17 at 11-65.)  He argues that: (i) the trial court erred by denying

19  his motion *in limine* to preclude the complaining witness from being referred to as a

20  "victim" at trial; (ii) the trial court abused its discretion by denying his motions for mistrial

21

22  [3] Arizona Rule of Criminal Procedure 11 provides that incompetence "means a defendant
23  is unable to understand the nature and objective of the proceedings or to assist in his or her
    defense because of a mental illness, defect, or disability." Ariz. R. Crim. P. 11.1(a)(2).
24

25  [4]Arizona Rule of Criminal Procedure 32.2 provides that a defendant is precluded from post-
26  conviction relief based on any ground "waived at trial or on appeal, or in any previous post-
    conviction proceeding, except when the claim raises a violation of a constitutional right
27  that can only be waived knowingly, voluntarily, and personally by the defendant." Ariz. R.
    Crim. P. 32.2(a)(3).
28

    [5] Bolivar withdraws his second ground for relief in his reply.  (*See* Doc. 19 at 4.)

and change of venue; (iii) the trial court erred by failing to vacate invalid criminal charges against him; (iv) the trial court erred by misallocating the burden to prove motivation of a sexual interest; (v) he suffered ineffective assistance of counsel when his trial attorney failed to object to profiling testimony; (vi) he suffered ineffective assistance of counsel when his trial attorney failed to request a Rule 11 evaluation; (vii) he was denied due process of law when the trial court failed to recuse itself after listening to testimony about the attack on his former wife and her boyfriend; and (viii) the trial court erred in ruling that he did not suffer ineffective assistance of counsel when his attorney failed to object to profiling testimony provided by the prosecution's expert. (*Id*. at 11-65.)

On November 18, 2024, the State filed a supplemental answer to Bolivar's amended petition arguing that his grounds for relief are either procedurally barred or meritless. (Doc. 18.) Bolivar filed an optional reply. (Doc. 19.) This Report and Recommendation follows.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs habeas corpus petitions filed after AEDPA was enacted in 1996. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA substantially limits the power of federal courts to grant habeas relief to state prisoners. *Hurles v. Ryan*, 752 F.3d 768, 777-78 (9th Cir. 2014). Under AEDPA, a federal court may not grant a prisoner's petition on a claim that was decided on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court's decision is "contrary to" clearly established federal law "if it fails to apply the correct controlling authority[,] or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Rowland v. Chappell*, 902 F. Supp. 2d 1296, 1308

(N.D. Cal. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).  A state court's decision involves "an unreasonable application" of federal law if "the state court identifies the correct governing principle … but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  A state court's factual findings are unreasonable if "reasonable minds reviewing the record could not agree with them."  *Ayala v. Chappell*, 829 F.3d 1081, 1094 (9th Cir. 2016) (cleaned up).  In any case, for habeas relief to be granted, "a state court merits ruling must be so lacking in justification that there was an error beyond any possibility for fairminded disagreement."  *Bemore v. Chappell*, 788 F.3d 1151, 1160 (9th Cir. 2015) (cleaned up).  In analyzing a § 2254 petition, review is limited to the record that was before the state court that adjudicated the merits of the claim.  *Pinholster*, 563 U.S. at 181.

## DISCUSSION

Bolivar brings his amended habeas petition raising eight grounds for relief.  (Doc. 17 at 11-65.)  All of his claims have been properly addressed and rejected by the state trial court and the Arizona Court of Appeals.  As such, his amended habeas petition should be denied and this case dismissed.

## I.    Ground One Incognizable On Federal Habeas Review

A state prisoner is entitled to federal habeas relief only if the last reasoned state-court ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  *Pinholster*, 563 U.S. at 181 (quoting 28 U.S.C. § 2254(d)(1)).  Section 2254(d)(1)'s "clearly established" phrase refers to Supreme Court holdings as of the time of the relevant state-court decision.  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).  "In other words, 'clearly established Federal law' … is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Id.* at 71-72 (citations omitted).  When Supreme Court precedent is ambiguous, a federal court may not overrule a state court for simply holding a view different from its own.  *Scott v. Arnold*, 962 F.3d 1128, 1131 (9th Cir. 2020).

In his first ground for relief, Bolivar argues that the trial court abused its discretion by denying his pretrial motion *in limine* to refrain from referring to the complaining witness as the "victim" at trial.  (Doc. 17 at 11-28.)  Bolivar asserts that the witness was called the victim so frequently that it infringed upon his rights to be presumed innocent and to a unanimous jury verdict.  (*Id*. at 25-26.)  Bolivar also argues that the trial court improperly commented on the evidence in violation of the Arizona Constitution when giving its preliminary jury instructions.  (*Id*. at 12, 23-24.)

Bolivar's arguments that the trial court improperly denied his motion *in limine* based upon a misinterpretation of Arizona's Victims' Bill of Rights, Ariz. Const. art. II, § 2.1, and that the court improperly commented on the evidence by referring to the complaining witness as the victim when delivering preliminary jury instructions in contravention of the state constitution are not cognizable grounds for federal habeas relief.  *See Burkey v. Deeds*, 824 F. Supp. 190, 192 (D. Nev. 1993) (citing *Estelle v. McGuire*, 502 U.S. 62 (1991)) ("A state's interpretation of its own laws or rules affords no basis for federal habeas corpus relief because no federal constitutional question arises.").

To the extent Bolivar alleges the trial court violated his constitutional rights to a fair trial and impartial jury by referring to the complaining witness as the "victim" during trial, the Court is unaware of any governing legal principle precluding the trial court from doing so.  *See United States v. Moffit*, 588 F. Supp. 3d 1106, 1116 (D. Idaho 2022) (collecting cases) ("the Court is unable to find[ ] any authority holding that references to a complaining witness as a 'victim' violates a defendant's constitutional rights, including the presumption of innocence and the government's burden of proof").  Bolivar fails to reference controlling case law indicating otherwise.  (*See* Doc. 17 at 18-19); *cf. Holley v. Yarborough*, 568 F.3d 1091, 1098 (9th Cir. 2009) ("When there is no clearly established federal law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue.")

Finally, Bolivar fails to argue much less demonstrate that the Arizona Court of Appeals' October 27, 2020 ruling on the issue was contrary to or involved an unreasonable application of clearly established federal law.  (*See* Doc. 17 at 11-28.)  As such, Bolivar's

1    first ground for habeas relief should be denied.

2    **II.    Biased Juror Claim Properly Denied On Merits**

3    Bolivar next argues that the trial court abused its discretion by denying his motions

4    for a new trial and a change of venue.  (Doc. 17 at 36-42.)  He bases his argument on the

5    premise that the trial court was required to interview each juror regarding potential

6    exposure to a negative newspaper article that was published midtrial in Nogales, Arizona.

7    (*Id.* at 40-41.)  Bolivar asserts that the court's decision to question only one of the jurors

8    about negative trial publicity violated his due process rights and right to a fair trial.  (*Id.* at

9    37.)  The Arizona Court of Appeals rejected this claim on the merits on appeal.  *Bolivar*,

10   477 P.3d at 679-82.  It summarized the underlying facts of the claim as follows:

> On the first day of trial, following jury selection, the court admonished the
> impaneled jurors not to do any independent research about the case and
> emphasized the need to evaluate the case based solely upon what happens at
> trial. The next morning, the court learned two armed men had attacked
> Becca's mother, Elizabeth, who was scheduled to testify against Bolivar,
> pistol-whipping her and stabbing her in the face and neck. The men also
> attacked her boyfriend. The parties agreed to a short continuance, and the
> court informed the jury that trial would not be proceeding that day due to an
> unforeseen matter. Before excusing the jurors, the court again admonished
> them that they "must not be exposed to any information other than the
> evidence presented in the courtroom," including "any information about the
> issues or persons involved in this trial," and that they "must not read or listen
> to any news accounts of the case." The jurors were also instructed to
> immediately inform the court if they unintentionally came across information
> related to the case.
>
> The state subsequently moved to revoke Bolivar's conditions of release, and
> the trial court concluded the attack "was a very deliberate attempt to
> intimidate the victim and ... the victim's mother" because it had occurred on
> the day trial was set to begin, after Becca and Elizabeth were identified as
> the state's first two witnesses, and "the only person who ... stood to benefit
> by that effort in this case" was Bolivar. After finding that the "presumption
> [was] great" and the "proof [was] eviden[t]" as to the charged sexual offenses
> and that Bolivar posed a substantial danger to Becca and her family, the court
> revoked Bolivar's release conditions pending trial and ordered that he be
> taken into custody.

The day before trial was scheduled to resume, Bolivar filed motions for change of venue and mistrial based on a newspaper article that had been published after the jury was impaneled, which reported the trial court's finding that Bolivar was responsible for the attacks on Elizabeth and her boyfriend. The article was entitled, "Defendant jailed without bond after attack against witness in Mexico" and featured a photograph of Bolivar being handcuffed. The caption underneath the photograph stated the court had "ordered that Bolivar, who is on trial for alleged sex crimes against a child, be sent to jail without bond after saying it was clear Bolivar ordered an attack on his alleged victim, the girl's mother and the mother's boyfriend."

The next day, the trial court began by giving preliminary instructions, during which it again admonished the jurors to avoid media coverage related to the trial. The court further instructed: "If you do encounter something about this case in the news media during the trial, end your exposure to it immediately and report to me as soon as you can." Bolivar then requested that the court ask if any of the jurors had been exposed to media coverage about the attack and, if so, to interview them at the bench. The court denied Bolivar's request[.]
. . . .

Later that day, the trial court heard argument on Bolivar's motions for change of venue and mistrial, during which Bolivar asserted the media coverage had prejudiced him and would "likely deprive[ ] him of a fair trial." Alternatively, Bolivar again asked the court to question the jurors as to whether they had been exposed to the newspaper article. The court denied Bolivar's motions, as well as his request to question the jurors, distinguishing between pretrial and midtrial publicity and finding it had adequately admonished the jurors to avoid information about the case outside of the courtroom. The court also noted questioning the jurors could "potentially ... provoke or cause someone to go and want to read that article. It's going to highlight it and bring it to their attention that it exists, when they might not have known about it before." At the end of the day, the court repeated its admonition instructing the jury not to read the news and to come forward if they encountered outside information about the case.

The following morning, the trial court questioned Juror Five after being informed that, at the end of the previous day's proceedings, he had asked the bailiff whether Bolivar's case would be dismissed based on a conversation he overheard at work. Juror Five indicated he had seen a picture of Bolivar being handcuffed by a police officer on the front page of a local newspaper and the headline "sounded like it said that [Bolivar] had perhaps sent his wife to have her killed so that she would not testify in court." Juror Five stated he had not

communicated with any of the other jurors about the article, had spoken to the bailiff outside the presence of the other jurors, and did not think the article would influence him because he "still [had] to hear a lot of testimony or proof" and "the only thing [he] saw was the heading of the paper."

Bolivar moved to excuse or strike Juror Five for cause, and the trial court denied his motion. However, the court and both parties agreed that the process for identifying alternate jurors at the end of trial would be manipulated to ensure that Juror Five was designated an alternate.

*Bolivar*, 477 P.3d at 679-81.

The court of appeals went on to rule that the case law Bolivar cited to support his interview-every-juror-for-prejudice assertion was distinguishable from his situation. *Id*. at 681. The court observed that while the trial court had discretion to question individual jurors as to whether they had been exposed to negative trial publicity, without an allegation of exposure, it was not required to do so. *Id*. at 682. It concluded that one juror's conduct did not defeat the presumption that other jurors followed the trial court's preliminary jury instructions. *Id*.

The court of appeals' decision was not contrary to or an unreasonable application of clearly established federal law. While the Sixth Amendment guarantees criminal defendants a verdict by impartial, indifferent jurors, *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998), the determination of whether a juror is actually biased is a question of fact for the trial court to decide, *Fields v. Woodford*, 309 F.3d 1095, 1103 (9th Cir. 2002). More importantly, there is no clearly established federal law that establishes that a biased juror's presence on the jury is structural error when the juror is dismissed before deliberations and the rendering of a verdict. *See United States v. Sanchez*, 692 F. Supp. 3d 1025, 1031 (D. Idaho 2023) (concluding that the court was unable to find any authority establishing presence of biased juror during deliberations was structural error).

Here, the trial court individually questioned Juror Five and determined that he was not biased and would not discuss the newspaper article with other jurors. (*See* Doc. 1-1 at 231-40.) Additionally, even though the trial court determined Juror Five was not biased,

the court eliminated any chance of structural error by designating the juror as an alternate at the end of trial, which removed him from jury deliberations and verdict rendering.  (*Id.* at 240-41.)  Bolivar failed to object to the alternate juror designation at trial.  (*Id.* at 241.)  As such, the state court of appeals' ruling was not an unreasonable application of clearly established federal, and Bolivar's third ground for habeas relief should be denied.

### III.    Federal Habeas Relief Unavailable for Alleged Invalid Criminal Charges

Bolivar's third ground for relief is premised on the claim that the trial court erred when it listed two charges in the alternative on juror verdict forms.  (Doc. 17 at 43-47.)  He relies on Arizona law to argue that the court's alternate charging arrangement contravenes Arizona's criminal statute for continuous sexual abuse of a child.  (*Id.* at 45-47.)  Bolivar fails to allege, however, that the trial court's conduct violated his constitutional rights or clearly established federal law, (*see id.*), and this ground for relief should be denied.

Bolivar was charged with nine criminal counts for the molestation of Becca.  *Bolivar*, 477 P.3d at 676.  Count One charged him with continuous sexual abuse of a child for crimes committed between May 7, 2006, and May 6, 2014.  *Id.* at 684.  Count Two charged him with sexual conduct with a minor for crimes committed between May 7, 2006, and May 6, 2010.  *Id.*  Count Nine charged him with molestation of a child for crimes committed between May 7, 2013, and May 6, 2014.  *Id.*

During closing argument, the trial court excused the jury and informed the parties it was concerned that Counts Two and Nine in the Information were included within the time period alleged in Count One, which violated Arizona law.  *Id.*; *see* A.R.S. § 13-1417(D).  The court proposed modifying the verdict forms and jury instructions to charge Counts One and Two and One and Nine in the alternative.  477 P.3d at 684.  Bolivar objected that the proposed modification would confuse the jury.  *Id.*  The objection was overruled and the court changed the jury instructions and verdict forms to present the charges in the alternative.  *Id.* at 685.  The jury found Bolivar guilty of all counts except Count One.  *Id.*

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502

U.S. at 68.  It is not the province of federal habeas courts to reexamine state court determinations on state law questions.  *Id.* at 67-68.

Bolivar argues that the trial court erred by failing to vacate two of the state criminal charges against him because the original charging document did not list Counts Two and Nine in the alternative to Count One.  (Doc. 17 at 47.)  This argument is not a cognizable ground for federal habeas relief because it challenges a state court's determination of state law.  *See Hasan v. Warden*, No. 2:21-CV-0354 DB P, 2021 WL 3662382, at *1 (E.D. Cal. Aug. 18, 2021), *report and recommendation adopted,* No. 2:21-cv-0354, 2021 WL 4803904 (E.D. Cal. Oct. 14, 2021) (denying petitioner's claim of invalid conviction under California law because "such an allegation is not cognizable in federal habeas because it is based on an alleged violation of state law"); *Hernandez v. McGrath*, 595 F. Supp. 2d 1111, 1140 (E.D. Cal. 2009) ("Habeas corpus is unavailable for alleged error in the interpretation or application of state law.").  As such, Bolivar's third ground for relief is not cognizable on federal habeas review and should be denied.

## IV.    Controlling Authority Precludes Improper Burden-Shifting Claim

Bolivar's fourth ground for relief is based on the claim that two state criminal statutes misplace the burden of proving lack of sexual motivation on the defendant.  (Doc. 17 at 48.)  Under Arizona's criminal statutory scheme, motivation by a sexual interest is not an element of the crimes of sexual abuse of a minor, A.R.S. § 13-1404, or child molestation, A.R.S. § 13-1410.  Instead, up until August 3, 2018, a lack of motivation by a sexual interest was an affirmative defense to those crimes.[6]

Bolivar argues that Arizona's criminal statutory scheme for these charges violates his Fourteenth Amendment due process rights.  (Doc. 17 at 48.)  Notably, he concedes that his claim is controlled by the Arizona Supreme Court's ruling in *State v. Holle*, 379 P.3d

---

[6] *See Morphis v. Thornell*, No. CV-23-02589, 2024 WL 4242499, at *9 (D. Ariz. Aug. 28, 2024), *report and recommendation adopted,* No. CV-23-02589, 2024 WL 4241585 (D. Ariz. Sept. 19, 2024) ("Effective August 3, 2018, the Arizona state legislature removed the language in A.R.S. § 13-1407(E) (2008) that provided an affirmative defense to A.R.S. §§ 13-1404 and 13-1410 for lack of sexual interest.").

197 (Ariz. 2016), and that the relevant parts of the decision that he uses to support his argument, *May v. Ryan*, 245 F. Supp. 3d 1145, (D. Ariz. 2017), have been reversed and vacated. (Doc. 17 at 50.) Bolivar uses this invalid claim as a historical placeholder because he speculates that other cases addressing the same issue will arise in the federal court system and eventually succeed. (Doc. 17 at 50.) This ground for relief should be denied.

In rejecting this claim on appeal, the state court of appeals observed that in *State v. Holle*, the Arizona Supreme Court determined that the statutory scheme to which Bolivar objects did not violate due process. *Bolivar*, 477 P.3d at 689. The court went on to declare that it was not at liberty to overrule or disregard the state supreme court's ruling. *Id*.

Here, Bolivar fails to demonstrate that the court of appeals' decision denying his due process claim was contrary to or involved an unreasonable application of clearly established federal law. (*See* Doc. 17 at 48-50.) In fact, he concedes that *State v. Holle* controls his position and that he presents his claim only to preserve it for future review. (*Id*. at 48-50.) Arguments based solely on abrogated case law and speculative decisions are not entitled to federal habeas relief. *Cf. Morphis*, 2024 WL 4242499, at *9 (reiterating that since *May's* reversal, neither the Ninth Circuit nor the United States Supreme Court has issued a decision invalidating Arizona's statutory structure for sexual abuse of a minor child molestation). As such, Bolivar's fourth ground for habeas relief should be denied.

## V.     Ineffective Assistance Claims Properly Denied On Merits

Bolivar's fifth, sixth, and eighth grounds for relief rest on the argument that he suffered ineffective assistance of trial counsel, which resulted in the denial of a fair trial. (Doc. 17 at 51-55, 63-65.) He argues that his trial attorney was ineffective for failing to object to the prosecution expert's profiling testimony and for failing to request a Rule 11 evaluation at trial.[7] (*Id*.) Bolivar asserts that the prosecution framed its questions and

---

[7] Arizona Rule of Criminal Procedure 11.2 protects a defendant's due process right not to be tried or convicted while incompetent "by providing for a prescreening examination and hearing if reasonable grounds exist to question the accused's competence." *State v. Kuhs*, 224 P.3d 192, 196 (Ariz. 2010).

answers to its expert in such a manner that the expert's testimony profiled him as an offender and that his lack of sleep and the improper treatment of his medical conditions made him unable to effectively participate in his own defense at trial.  (*Id.*)  Bolivar, however, fails to challenge the Arizona Court of Appeals' application of *Strickland v. Washington*, 466 U.S. 668 (1984), to his ineffective assistance claims, and even if he did, the state appellate court correctly rejected the claims on their merits.

Federal habeas relief may be granted for ineffective assistance claims only if the last reasoned state-court decision unreasonably applied the more general ineffective assistance standard established by *Strickland*.[8]  *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). The general ineffective assistance standard requires the defendant to demonstrate that: (i) counsel's performance was deficient; and (ii) the deficient performance prejudiced the defense.  *Hardy v. Chappell*, 849 F.3d 803, 818 (9th Cir. 2016).

Deficient performance requires a showing that "trial counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms."  *Hurles*, 752 F.3d at 778.  Courts considering ineffective assistance claims must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.  *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

To establish prejudice, the defendant "must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Hurles*, 752 F.3d at 779 (cleaned up).  A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

Here, the last reasoned state-court decision addressing Bolivar's ineffective assistance claims is the Arizona Court of Appeals' decision denying his petition for review. *State v. Bolivar*, No. 2 CA-CR 2023-0060-PR, 2023 WL 3938976, at *1 (Ariz. Ct. App.

---

[8] "Federal habeas courts look to the last reasoned decision that resolves the claim at issue in order to determine whether that claim was adjudicated on the merits." *Lyles v. Sherman*, 704 F. Supp. 3d 1039, 1045 (C.D. Cal. 2023) (cleaned up). "Where more than one state court has rendered a reasoned decision on a habeas petition, the ordinary rules of appellate review apply such that a determination by a higher-level court overrules a determination on the same issue by a lower-level court." *Id.* (cleaned up).

June 9, 2023), *review denied* (Oct. 17, 2023).

### A.    Doubly Deferential Review

Since the June 9, 2023 ruling from the state court of appeals is the last reasoned state-court decision addressing Bolivar's ineffective assistance claims, this Court must determine whether the ruling demonstrates that the state court unreasonably applied *Strickland* to the facts of his case. *See Harrington*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."). This is different from assessing whether defense counsel's performance fell below *Strickland's* standard. *Id.* For purposes of a state prisoner's habeas corpus petition, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* (cleaned up). "The prisoner must show that the state court's decision is so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (cleaned up). This is a difficult to meet and highly deferential standard, "which demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (cleaned up). If the state court ruling identifies the correct governing legal principle in existence at the time, it is the defendant's burden to prove that the decision unreasonably applied that principle to the facts of his case. *Id.* at 181-82. Where ineffective assistance is alleged in a post-AEDPA federal habeas petition, a court's review is "doubly deferential." *Mirzayance*, 556 U.S. at 123.

### 1.    *Strickland* Reasonably Applied to IAC Claims

In his Petition for Review, Bolivar argued that he suffered ineffective assistance of counsel because his trial attorney failed to object to the prosecution expert's profiling testimony before the court intervened. (Doc. 1-2 at 199.) He asserted that the attorney's performance was deficient because there was no strategic or tactical reason for counsel not to object. (*Id.* at 212.) He also alleged that prejudice was evident because he was profiled as an offender by the prosecution's expert and that the prejudice was not harmless because the evidence against him consisted almost entirely of the victim's testimony. (*Id.*)

Bolivar also argued that he was denied effective assistance of counsel because his trial attorney failed to request a Rule 11 evaluation at trial, where he was allegedly unable to participate and assist his attorney due to health issues caused by his incarceration. (*Id*. at 213.)    He asserted that his attorney's failure to preserve his due process right to competently stand trial by requesting an evaluation was clearly deficient. (*Id*. at 217.)  He alleged that he suffered prejudice because he was unable to effectively participate in his own defense.  (*Id*. at 218.)  He concluded his argument by asserting that the trial court's denial of a Rule 32 evidentiary hearing on the matter constituted structural error, and he requested that his case be remanded for an evidentiary hearing.  (*Id*. at 220.)

In affirming the trial court's rejection of Bolivar's ineffective assistance claims, the Arizona Court of Appeals identified *Strickland* as the proper governing legal principle over the claims.  *Bolivar*, 2023 WL 3938976, ¶ 5.  The court also observed that a failure to satisfy either of *Strickland's* prongs was fatal to ineffective assistance claims.  *Id*.

In addressing Bolivar's first ineffective assistance claim, the court of appeals summarized two Arizona Supreme Court decisions that discussed the potential prejudicial effect of admitting profiling testimony at trial, *State v. Ketchner*, 339 P.3d 645 (Ariz. 2014), and *State v. Haskie*, 399 P.3d 657 (Ariz. 2017).  *Id*. ¶¶ 8-9.  The court likened Bolivar's profiling allegation to the scenario in *Haskie*, where the court determined that the trial court had not erred in admitting the challenged testimony because each statement served the purpose of explaining victim behavior despite some references to an abuser's characteristics.  *Id*. ¶ 10.  The Arizona Court of Appeals determined that the prosecution expert's testimony at Bolivar's trial was not prejudicial because the testimony was largely tied to the victim's behavior, as the testimony explained why victims might delay reporting abuse and why they might mistakenly believe that abuse is normal if the abuse is happening while others are at home.  *Id*.  The court agreed with the trial court's assessment that any profile testimony admitted before defense counsel's sustained objection at Bolivar's trial was limited and non-specific and did not have the effect of informing the jury how it should decide the case.  *Id*. ¶ 11.

In addressing Bolivar's second ineffective assistance claim, the court of appeals reiterated that the record failed to establish that trial counsel was aware of Bolivar's alleged physical challenges during trial and that his affidavit did not avow that he had informed his attorney of his condition. *Id.* ¶ 11. The court acknowledged that Bolivar's attorney raised the issue of his state of mind at sentencing. *Id.* The court ruled that even if counsel was aware of Bolivar's medical issues during trial, the issues did not suggest that Bolivar satisfied Rule 11's definition of incompetence. *Id.* ¶ 14. The court observed that the assertions in Bolivar's affidavit did not rise to that level. *Id.*

The court of appeals also reiterated that the trial court noted that Bolivar "always seemed articulate and lucid" during trial. *Id.* The court determined that counsel could not have rendered ineffective assistance by failing to request a Rule 11 evaluation if counsel had no reason to know one was needed. *Id.* The court instructed that to establish a colorable claim of ineffective assistance, Bolivar was required to present more than a conclusory assertion of the issue, which he failed to do. *Id.* ¶ 15. The court affirmed the trial court's rejection of Bolivar's second ineffective assistance claim. *Id.*

In the petition at hand, Bolivar fails to argue that the Arizona Court of Appeals misapplied *Strickland* to his ineffective assistance of counsel claims. (*See* Doc. 17 at 51-55, 63-65.) Even if he did, this Court's review of the decision finds that the court identified the correct governing principle over ineffective assistance claims and properly rejected them, in turn, for failure to sufficiently demonstrate prejudice and deficient performance. *See Bolivar*, 2023 WL 3938976, ¶¶ 10-11, 13-15. As such, Bolivar's fifth, sixth, and eighth grounds for federal habeas relief should be denied.

## VI.    Recusal Argument Procedurally Defaulted

Bolivar's seventh ground for relief rests on the assertion that he was denied due process of law because the trial court failed to recuse itself after hearing details of an attack on his former wife and her boyfriend during trial. (Doc. 17 at 56.) Bolivar omits any reference to controlling authority to support his claim and instead submits seven pages of "facts." (*Id.* at 56-62.) The trial court denied this claim as meritless, (*see* Doc. 1-2 at 176-

77), and the Arizona Court of Appeals determined the claim was procedurally barred, *see Bolivar*, 2023 WL 3938976, ¶ 16. The court of appeals also concluded the claim lacked merit. *Id.*, ¶¶ 17-18. The Court concludes that Bolivar's recusal claim is procedurally barred, determines that he fails to demonstrate cause for the procedural default, and recommends denial of the claim.

A habeas petitioner's claim may be precluded from federal review if it was actually raised in state court but found to be defaulted on state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). The procedural bar relied on by the state court must be independent of federal law and adequate to warrant preclusion of federal review. *Harris v. Reed*, 489 U.S. 255, 262 (1989). Arizona Rule of Criminal Procedure 32.2(a), has been found to be independent of federal law and adequate to warrant preclusion of federal review. *See, e.g., Cook v. Schriro*, 538 F.3d 1000, 1025-27 (9th Cir. 2008). Even if a state court applies a procedural bar but goes on to alternatively address the merits of the federal claim, the claim is still barred from review. *Celaya v. Stewart*, 691 F. Supp. 2d 1046, 1089 (D. Ariz. 2010); *see also Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim."). Where a state prisoner's federal claim is precluded by violation of a state procedural rule, it is procedurally defaulted unless the prisoner can demonstrate cause for the default and prejudice from a violation of federal law. *Martinez v. Ryan*, 566 U.S. 1, 10 (2012).

Here, the Arizona Court of Appeals concluded that Bolivar's recusal claim was precluded from review under Arizona Rule of Criminal Procedure 32.2(a)(3). *See Bolivar*, 2023 WL 3938976, ¶ 16. Review of the relevant portions of his amended habeas petition also reveals that Bolivar fails to argue much less demonstrate cause for the default and prejudice from the alleged violation of federal law. (*See* Doc. 17 at 56-62.) As such, his seventh ground for habeas relief is procedurally defaulted and should be denied.

////

////

- 18 -

## RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Judge DENY Bolivar's first amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody, (Doc. 17), and dismiss with prejudice this case. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation, and a party may respond to another party's objections within 14 days after being served with a copy. No replies shall be filed unless leave is granted by the District Judge. If objections are filed, the parties should use the following case number: **CV-24-271-AMM**. Failure to file timely objections to any of the Magistrate Judge's factual or legal determinations may result in waiver of the right of review.

Dated this 18th day of April, 2025.

Honorable Bruce G. Macdonald
United States Magistrate Judge